IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANA DENISE HOLT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-2615-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Dana Denise Holt, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether she has a severe impairment;

(3)   whether her impairment meets or equals one listed by the Secretary;

(4)   whether the claimant can perform her past work; and

>    (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Vernon J. King, Jr., determined the plaintiff met the first two tests, and found that the plaintiff has the following severe impairments:  a mood disorder, a personality disorder, non-insulin-dependent diabetes mellitus, intermittently mild to moderate right knee and left foot problems, and obesity. [R. 16]. . The ALJ found that the plaintiff's impairment or combination of impairments did not meet or medically equal a listed impairment.  [R. 17].  The ALJ found that the plaintiff retains the residual functional capacity to perform a full range of light work, but with

some additional limitations.[1]   Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen,

---

[1]  "More specifically, the claimant must be allowed to frequently rotate between standing and sitting; she must avoid exposure to industrial hazards; and she must avoid exposure to concentrated pulmonary irritants.  Moreover, she can perform only simple tasks, which must be done in a structured environment where there would be help in setting and reaching goals.  Finally, she can have no more than limited public contact. [R. 17].

4

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff was 48 years old at the time of the ALJ's decision and has worked as a self-employed hairstylist, but has not worked since January 2005. [R. 136]. She claims disability because of multiple impairments, including obsessive-compulsive disorder, anxiety and depression, as well as some physical problems. [R. 147].

On August 20, 2007, the Commissioner sent the plaintiff to Cynthia A. Neville, Ph.D., a licensed clinical psychologist, for a consultative psychological evaluation.  Dr. Neville noted the plaintiff's symptoms:

> Ms. Holt described problems with feelings of agitation and depression with daily 2-hour episodes of feeling agitated and fearful with racing heartbeat, crying spells, and excessive irritability.  She alluded to longstanding fears of being alone, feelings of guilt, and a tendency to be a perfectionist and demand others adhere to her wishes.  Ms. Holt noted that she finds it difficult to concentrate and to make decisions.

[R. 222].  Dr. Neville described the plaintiff's mood as primarily agitated and depressed, and her affect as intense and labile.[2] [R. 223].  Dr. Neville's diagnostic impression was Bipolar II Disorder, Most Recent Episode Hypomanic, Moderate Severity (Provisional), History of Alcohol Abuse, rule out Personality Disorder Not Otherwise Specified (Dependent and Obsessive-Compulsive Traits), as well as Diabetes, Hypertension, Status

---

[2]  "Labile" is "gliding; moving from point to point over the surface; unstable; fluctuating." Dorland's Illustrated Medical Dictionary 891 (28th Ed. 1994).  This indicates abnormal sudden rapid shifts in emotions.

Post Foot Surgeries, and Status Post 2002 Gastric Bypass Surgery by client report. [R. 224].  She noted:

> It is this examiner's opinion that Ms. Holt's reported issues with irritability, concentration limitations, agitation, depression, and impulsivity might be better captured by a diagnoses of Bipolar II Disorder rather than AD/HD. However, her problems with distortions and lability could alternately point to the appropriateness of a personality disorder diagnosis.

[R. 224-225].  Dr. Neville though that the plaintiff was "adequately motivated to cooperate," and commented that her ability to remember and follow through with work instructions, interact appropriately with coworkers, and to handle typical work pressures "would likely be negatively impacted by her psychiatric issues to a mild to moderate degree." [R. 225].

On January 18, 2008, the plaintiff's treating physician, C.V. Skoog, Jr., M.D., completed a Physical Capacities Evaluation, opining that the plaintiff could lift or carry 10 pounds occasionally or less frequently, sit for four hours, and stand and walk two hours combined in an eight-hour workday. [R. 261].  Dr. Skoog also completed a Supplemental Questionnaire as to Residual Functional Capacity, in which he found that the plaintiff had an extreme restriction of activities of daily living, and a marked impairment in her ability to respond to customary work pressures. [R. 262].

On March 23, 2009, the plaintiff's treating psychiatrist, Cesar E. Munoz, M.D., also completed a Supplemental Questionnaire regarding the plaintiff's residual functional capacity.  Dr. Munoz estimated marked impairments in: restriction of activities of daily living; deficiencies of concentration, persistence or pace resulting in frequent

6

failure to complete tasks in a timely manner; responding to customary work pressures; responding appropriately to supervision in a work setting; and responding appropriately to co-workers in a work setting. [R. 281-282].

The ALJ gave no weight to the opinions of the plaintiff's treating physician and treating psychiatrist, concluding that their findings were "quite conclusory," inconsistent with the plaintiff's activities of daily living, and inconsistent with the treatment notes of the doctors. [R. 24]. However, the ALJ gave significant weight to the opinion of the Commissioner's own consultative examiner. [R. 20]. The ALJ's conclusion is not supported by substantial evidence.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

<u>Id.</u> at 337 (emphasis added)(citations omitted).  In this case, however, the ALJ ignores the opinions of the plaintiff's treating physician, Dr. Skoog, and treating psychiatrist, Dr. Munoz.  As far as Dr. Munoz's report, the ALJ stated:

> Reportedly, the form was to be used to amplify the psychiatrist's narrative report.  However, as far as I can tell, the psychiatrist never submitted a narrative report.

[R. 24].  The court has reviewed Dr. Munoz's treatment notes and concludes that they are not inconsistent with his questionnaire.  However, the ALJ had the opportunity to recontact Dr. Munoz to explain his seemingly inconsistent testimony, but chose not to do so.  One important aspect of the Commissioners' duty to develop a fair and complete record is his duty to recontact a claimant's treating physician.  The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

8

20 C.F.R. § 404.1512(e).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement.  He is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians</u>:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988).  . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand.  . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that the ALJ has abused his discretion by substituting his own medical judgments for those of the plaintiff's treating physician and psychiatrist, Drs. Skoog and Munoz. The court concludes that substantial evidence does not support the ALJ's decision not to credit and to ignore the opinions of the plaintiff's treating physician and psychiatrist. Based upon these opinions, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 30 April 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.